UNITED STATES DISTRICT COURT

FOR THE

MIDDLE DISTRICT OF LOUISIANA


GILLIAN BEEBE, as guardian for the minor
children WILLIAM P. NEWMAN and GINGER
B. NEWMAN, and, as Administratrix of The
Estate of Lauren Beebe

                                       Plaintiff

and

JOSEPH A. CIPPARONE, as Administrator of The
Estate of Billy Wayne Newman,

                                       Plaintiff

versus


      Magistrate:_____
TODD HINES,

                            Defendant


Civil Action No.:


Judge:_____


MEMORANDUM IN SUPPORT OF MOTION FOR
WRIT OF SEQUESTRATION

May It Please the Court,

      Plaintiffs in this action, residents of and domiciled in the state of Connecticut, have

brought this action under this Court's diversity jurisdiction against a resident of Louisiana.

      As is more fully set forth below, Plaintiffs submit that Connecticut law applies to the

merits of their claim, as the state of Connecticut's policies would be the most seriously impaired

if its laws are not applied herein.  However, with respect to the request for the seizing of funds

1

over which Plaintiffs claim a constructive trust, Rule 64 of the Federal Rules of Civil Procedure provides for the use of the law of the state in which the court is sitting to do so.

**RULE 64 AND LOUISIANA'S WRIT OF SEQUESTRATION.**

Federal Rules of civil Procedure, Rule 64 provides,

(a) Remedies Under State Law - In General. At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment.

(b) Specific Kinds of Remedies. The remedies available under this rule include the following - however designated and regardless of whether state procedure requires an independent action:
> arrest;
> attachment;
> garnishment;
> replevin;
> sequestration; and;
> other corresponding or equivalent remedies.

The United States Supreme Court, in *Mitchell v. Grant Company*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), recognized the validity of Louisiana's Code of Civil Procedure Articles on Sequestration.

[W]e are convinced that the Louisiana sequestration procedure is not invalid, either on its face or as applied. Sequestration under the Louisiana statutes is the modern counterpart of an ancient civil law device to resolve conflicting claims to property. Historically, the two principal concerns have been that, pending resolution of the dispute, the property would deteriorate or be wasted in the hands of the possessor and that the latter might sell or otherwise dispose of the goods. A minor theme was that official intervention would forestall violent self-help and retaliation. See Millar, Judicial Sequestration in Louisiana: Some Account of Its Sources, 30 Tul.L.Rev. 201, 206 (1956).

Louisiana statutes provide for sequestration where 'one claims the ownership or right to possession of propety, or a mortgage, lien, or privilege thereon . . . if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action.'

*Mitchell*, *supra* at 604-606.

*See also* *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, at 560 (5th Cir. 1987), ("Such an injunction to secure future payment of possible money damages would be in the nature of a 'prejudgment attachment' subject to Federal Rule of Civil Procedure 64, and through that rule to the strictures of state law."); *In re Fredeman Litigation*, 843 F.2d 821, at 826 (5th Cir. 1988) ("This preliminary injunction, like the order in *Dixon*, is in the nature of an attachment whose availability is governed by Federal Rule of Civil Procedure 64, . . . and through that rule by state law."); *A.T.N. Industries, Inc., v. Mauricio Gross*, No. 15-20102, at p. 8 (5th Cir. 2015) (unpublished opinion) ("Rule 64(a) of the Federal Rules of Civil Procedure allows courts to seize property to the extent allowed by the laws of the state where the court in located."); *Goya Foods, Inc. v. Wallack Management Co.*, 290 F.3d 63, at 70 (1st Cir. 2002) ("Our starting point is the acknowledged power of a federal district court to issue orders 'providing for seizure . . . of property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action.' Fed. R. Civ. P. 64. By its terms, that rule allows a federal court to borrow provisional remedies created by state law.").

In order for a Writ of Sequestration to issue, the nature of the claim, the amount thereof, and the grounds relied upon for the issuance of the writ must clearly appear from the specific facts of a petition verified by the petitioner or his counsel.

> [T]he writ of sequestration is a conservatory writ which is intended to preserve property pending the outcome of a judicial proceeding. . . . As the remedy is a harsh one, the pleading requirements for a writ of sequestration are strictly construed. (Citations omitted).
> A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent. La. Code Civ. P. art. 3501.

Louisiana Code of Civil Procedure Article 3571 addresses the grounds for issuance of a writ of sequestration, stating:

> When one claims the ownership or right to possession of property, or a mortgage, security interest, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action. La. Code Civ. P. art. 3571.

*Grantt Guillory Enters., Inc. v. Quebedeaux*, 110 So.3d 182, at 189–90 (La. App. 3rd Cir. 2013) (citations omitted).

> Louisiana statutes provide for sequestration where 'one claims the ownership or right to possession of property, or a mortgage, lien, or privilege thereon . . . if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action.' Art. 3571. The writ, however, will not issue on the conclusory allegation of ownership or possessory rights. Article 3501 provides that the writ of sequestration shall issue 'only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts' shown by a verified petition or affidavit.

*Mitchell*, *supra* at 605-06.

**PLAINTIFFS' VERIFIED COMPLAINT.**

In their verified Complaint, Plaintiffs have pled that Defendant, Todd Hines ("Hines" or "Defendant"), wrongfully received the Death Benefit Proceeds on an insurance policy on the life of Billy Wayne Newman ("Newman"). The verified Complaint, along with the supporting exhibits, establish that on October 30, 2015, the decedent was served with a Complaint for divorce and with the Automatic Orders that go into effect upon service in a divorce action and provide, *inter alia*, that "[n]either party shall change the beneficiaries of any existing life insurance policies, and each party shall maintain the existing life insurance, automobile insurance, homeowners or renters insurance policies in full force and effect." Conn. Practice Book § 25-5(b)(7).

4

Thereafter, Hines drove with Newman from Connecticut to Baton Rouge, where on November 13, 2015, Newman knowingly and wrongfully changed the Primary Beneficiary from his wife, Lauren Beebe, to Defendant. On this same date Newman also changed the title on a van from his wife's name to his own, and then left the van with Hines to use in a Limited Liability Company's business in which he and Hines were the sole members. Newman then returned to Connecticut and on November 25, 2015, he murdered his wife and committed suicide. The only heirs of Newman and his wife are their minor children, William P. Newman and Ginger B. Newman, appearing herein through their court appointed guardian, Gillian Beebe.

On December 14, 2015, less than three weeks after Newman committed suicide, Defendant filed a claim for the insurance benefits, along with the original insurance policy and a copy of the death certificate. It is not known where or how Defendant obtained the original insurance policy. It is known, though, that Plaintiffs were totally unaware that Newman had wrongly changed the named beneficiary to Defendant, yet Defendant obviously knew. Further, although Defendant knew Newman's family and that he left two minor children, he did not inform Newman's sister-in-law or any of Newman's family in Connecticut that he was filing a claim for the $500,000 in death benefits.

The verified complaint also sets forth a cause of action for equitable restitution and the establishment of a constructive trust on the Death Benefits proceeds under Connecticut law, which state's law would apply to this matter.

## CONNECTICUT LAW APPLIES.

A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Klaxon v Stentor*, 313 U.S. 487, 62 S.Ct., 1020, 85 L.Ed. 1477 (1941); *Day Zimmermann, Inc v. Challoner*, 423 U.S. 3, at 5, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Ellis v.*

*Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2010); *Williams v. Liberty Mut. Ins. Co.* 741 F.3d 617 (5th Cir. 2014).

Louisiana Civil Code Article 3515 provides that a case having contacts with other states is governed by the law of the state "whose policies would be most seriously impaired if its law were not applied to that issue." That article provides that the determination of which state's policies would be most seriously impaired is made by evaluating the strength and pertinence of the relevant policies of all involved states in light of the relationship of each state to the parties and the policies and needs of the interstate systems, including the policies of upholding the justified expectations of the parties. Also on point is Civil Code Article 3522, which provides that the effects and incidents of marriage and divorce are governed by Article 3519, which similarly provides that such issues are governed by the laws of the state's whose policies would be most seriously impaired if its laws were not applied.

Here, the policies of the state of Connecticut in upholding the sanctity of its tribunals, the lawful orders of those tribunals, its laws relating to divorce, and the protection of the rights of its citizens more than outweighs any policies the state of Louisiana may have because the individual who was unlawfully and gratuitously named as a new beneficiary happens to be a resident of Louisiana. The ultimate individuals affected by the Newman's unlawful actions are the minor children, William P. Newman and Ginger B. Newman, who are residents of Connecticut. Both of their parents were residents of and domiciled in Connecticut. Both of their parents were subject to the jurisdiction of the Connecticut court in which a Complaint for Divorce had been filed, and both were subject to its lawful orders in that divorce action. "The purpose of the automatic orders in marital dissolution actions is to maintain the status quo of the assets within the marital estate so that they may be distributed by the court at the time of dissolution." *O'Brien*

*v. O'Brien*, 161 Conn. App. 575, 590, 128 A.3d 595 (2015). "[T]he public policy of [Connecticut] is to prohibit a party to a dissolution proceeding from removing marital assets for an improper purpose and to maintain the status quo of the parties' assets during the pendency of the dissolution proceeding." *Ferri v. Powell-Ferri*, 317 Conn. 223, 233, 116 A.3d 297 (2015).

It would be completely incongruous to allow the unlawful acts of a resident of a state, in abject and knowing violation of a valid court order of that state, which had exercised proper and lawful jurisdiction over that individual, to circumvent the policies of that state by simply naming a non-resident as the beneficiary of insurance proceeds. Even more so, it would be oppressive and onerous to deny the minor children herein the benefits of a court order issued to protect the rights that are ultimately their rights.

On the other side of this equation are only the interests of an individual, Hines, who was gratuitously, and in violation of a valid court order, named as a beneficiary of an insurance policy. The policy itself was owned by a citizen of Connecticut. The laws of Connecticut, not Louisiana, would govern the rights, obligations, and limitations on the ownership of that policy. Louisiana has no interest in, and most certainly no say in, the rights and limitations on the ownership of an insurance policy issued in another state on the life of a resident of another state. As such, on balance, it is clear that the policies of Connecticut would be most seriously impaired if its laws did not govern this matter.[1]

**EQUITABLE RESTITUTION/CONSTRUCTIVE TRUST.**

---

[1] Besides, the Louisiana Civil Code would provide the same general relief sought herein under Connecticut law. Article 1971 requires the object of any contract to be lawful, which a change of beneficiary in violation of a court order would not be. Article 2033 provides that a contract declared null by a court is deemed never to have existed, and the parties must be restored to the

The specific facts pled in the verified Complaint establish that Lauren Beebe filed for divorce from Billy Wayne Newman on or about October 19, 2015 in Connecticut Superior Court for the Middlesex Judicial District. Newman was served with the Summons, and Complaint for Divorce, along with the Court's Automatic Orders, on October 30, 2015. A copy of the service of the Complaint for divorce and the Automatic Orders are attached to the complaint. As stated above, the Automatic Orders provide that "[n]either party shall change the beneficiaries of any existing life insurance policies, and each party shall maintain the existing life insurance, automobile insurance, homeowner's or renter's insurance policies in full force and effect." Conn. Practice Book § 25-5(b)(7).

Notwithstanding this specific order, on November 13, 2015 Newman faxed a change of beneficiary form to Protective Life Insurance Company from Southern Pottery Equipment and Supplies, the LLC in which he and Defendant were members. He also changed the title to a 2007 van from that of his wife to his own name that same day. He later left that van with Defendant, also evidencing an intent to keep anything he could from his wife.

Under Connecticut jurisprudence, an equitable interest in the life insurance policy on Newman vested in Lauren Bebee upon service of the Automatic Orders on Newman. In *Kulmacz v. New York Life Ins. Co.*, 39 Conn. Supp. 470, 466 A.2d 808 (Conn. Super. App. Div. 1983), the Appellate Session of the Connecticut Superior Court ordered the proceeds of a life insurance policy to be paid to the ex-wife and children of the decedent where the decedent had changed the beneficiary in violation of a court order issued in conjunction with a judgment of divorce. The new beneficiaries, the decedent's siblings, argued that the change was properly

situation before the contract was made. Lastly, Articles 2303 and 2304 provide for the restoration of the payment of a thing not owed.

made under the terms of the insurance contract and that accordingly the ex-wife and the children no longer had any interest in the proceeds. The court disagreed:

> This argument fails for the reason that Lydia and the children had a vested interest in the policy proceeds by virtue of the dissolution judgment. Thus, Bruno's attempt to change beneficiaries was ineffective and void.

*Kulmacz*, *supra* at 811.

The same is true herein. The change of beneficiary in violation of the Automatic Orders served on Newman was "ineffective and void." The court also rejected the argument that since the insurer was not notified of the order prohibiting the change, the proceeds should be distributed pursuant to the contract, leaving only an obligation of the decedent's estate to the ex-wife and children. The court, exercising its authority under equity, ordered the proceeds payable to those who would have received them had the decedent not violated the order.

> We cannot agree, however, that the failure to notify the insurer discharged the insured from his legal duty under the property settlement agreement. Moreover, where, as here, the insurer did not make payment to either claimant, we hold that it is equitable and proper to award the proceeds to the party legally entitled to them, rather than to another and thereby necessitating further litigation against the estate.

*Kulmacz*, *supra* at 812.

Although *Kulmacz* was an interpleader action, the point of law addressed remains the same. The act of changing the beneficiary in violation of a valid order served on the decedent made the change null and completely void. The fact that the proceeds have been paid out by the insurer does not alter or "discharge" the duty owed by the decedent not to do so. Equity requires that the proceeds be awarded to the individuals who are legally entitled to them, rather than another party who was gratuitously and illegally named as the beneficiary.

Another case on point is *Hunter v. Hunter*, 570 A.2d 246, 41 Conn. Supp. 289 (Conn.

Super., 1989). Therein, as part of a divorce judgment the decedent was ordered not to change the beneficiary on any life insurance policy provided to him by his employer or any future employer. After re-marrying, the decedent changed the beneficiary to his new wife. After he died the death benefits were paid to the decedent's then wife, according to the change of beneficiary made by the decedent. The court found that a constructive trust was created by the decedent's violation of the terms of the judgment decree.

Citing an earlier decision, _Brown v. Brown_, 190 Conn. 345, 349, 460 A.2d 1287 (1983), the court noted that a constructive trust is created where the individual holding title to property would be unjustly enriched if he retained it, and is thus subject to an equitable duty to convey it to the rightful owner.

> A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.

_Hunter_, _supra_ at 247.

The court went on to find that the violation of the order constituted fraud on the decedent's part, and that the present beneficiary, to whom the proceeds were paid, was unjustly enriched, and accordingly, a constructive trust was created in favor of the decedent's children.

> It follows therefrom that [the children] acquired a vested equitable interest in the policy on his death, which is the basis for a constructive trust of the policy proceeds. In removing the children as beneficiaries of the policy, the decedent violated the judgment of the Superior Court and that constituted fraud. The defendant should not be allowed to become unjustly enriched as a result of the decedent's violation of the dissolution decree. In the words of Judge Cardozo, "[a] constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." Thus, a constructive trust is an equitable remedy.

_Hunter_, _supra_ at 248 (internal quotation marks and citations omitted).

This is exactly the situation we have here. Newman absolutely violated the Automatic Orders of the Connecticut Superior Court when he changed the beneficiary of the life insurance policy from his wife to the Defendant. There is no doubt that he was knowingly and intentionally violating the court's orders when he did so. This unlawful change, coupled with Newman's murder of his wife, Lauren Beebe, resulted in the proceeds of the policy going not to Newman's and Lauren Beebe's minor children, but to the Defendant. The Defendant cannot be allowed to be unjustly enriched by the bad faith and fraud perpetrated by the decedent. The change of beneficiary was null and void and of no effect. Lauren Beebe had a vested interest in the life insurance policy once Newman was served with the Automatic Orders prohibiting him from changing the beneficiary. That vested interest passed to Lauren Beebe's sole heirs, her minor children, upon her death.[2]

Because those proceeds have been paid to Defendant, with which he was unjustly enriched, a constructive trust has been created on those funds in favor of those legally entitled to the proceeds, the minor children of the decedent and his wife. The remedy is one in equity. One can hardly imagine a situation in which equity is called upon to right a greater wrong than the present one. Equity demands that the children receive the funds to which they would have been legally entitled but for the fraud and willful violation of a court order by Newman, and the

---

[2] From a purely contractual standpoint, when the decedent murdered his wife before killing himself, with the change of beneficiary to Defendant being null and of no effect, Newman would have died with no living named Primary Beneficiary. Under the terms of the policy the proceeds would be payable to his estate, and thence to his sole heirs, his minor children, which would have the same ultimate result, that is, a constructive trust over the proceeds in favor of William P. Newman and Ginger B. Newman.

premeditated murder of his wife.[3]

The proceeds, however, are in the Defendant's possession. He has been provided a "draft account" for those proceeds with a checkbook, which allows him complete access to those funds. It is entirely within his power to waste, dissipate, or secret those funds. As such, under the specific facts pled in the Verified Complaint, a Writ of Sequestration should issue, seizing those proceeds.

Respectfully submitted

s/ L.J. Hymel
L.J. Hymel, T.A. (La. Bar # 07137)
Michael Davis (La. Bar #17529)
10602 Coursey Boulevard
Baton Rouge, Louisiana 70816
Telephone 225-298-8118
Facsimile 225-298-8119


Timothy W. Cerniglia (La Bar No. 03964)
1521 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone 504 - 586-0555
Facsimile 504-586-0550

Attorneys for Plaintiffs

---

[3] Irrespective of whether the constructive trust flows through the Estate of Lauren Beebe, which would be most equitable in not allowing a wrongdoer to benefit from his crime, or whether the trust flows through the decedent's estate contractually, with the change of beneficiary to Defendant being of no effect, the ultimate result is the same. The sole heirs of Lauren Beebe and Billy Newman, their minor children, are the ones who are rightfully entitled to the death benefits under the life insurance policy.